# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE CO., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 1:17-CV-84-HAB |
| MEGA LION, INC., | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Motorists Mutual Insurance Co.'s Motion for Summary Judgment (ECF No. 48). Plaintiff asks this Court to determine, as a matter of law, that Defendant Mega Lion, Inc. is liable under the Indiana Product Liability Act, Ind. Code § 34-20-1-1, *et seq.* (the "Act"), for placing a defective water supply line into the stream of commerce. Defendant has filed a Response in Opposition (ECF No. 51), arguing that there are genuine issues of material fact as to whether Defendant placed the supply line into the stream of commerce, and further as to whether Defendant can be held liable under the theory of strict liability. For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be denied.

## FACTUAL BACKGROUND

Plaintiff's lawsuit arises out of water damage suffered by its insureds, Trent and Heidi Schrock, on July 14, 2015. It is undisputed that Plaintiff is subrogated to the rights of its insureds. Plaintiff alleges that the cause of the water damage was a faulty water supply line to an upstairs faucet. Plaintiff further alleges that the faucet and the supply line were sold by Defendant.

It is undisputed that the faucet was an ELITE brand faucet, sold by Defendant. Mr. Schrock and his two sons installed the faucet in May or June of 2015, and they allege they used the supply

line included with the faucet. Mrs. Schrock purchased the sink, faucet, and water supply line online from the same company, but she does not remember the website she used for the order. In addition, she does not remember whether the sink and faucet were sold as a single unit or as separate products. The Schrocks no longer have the receipt for the purchase.

The supply line installed by the Schrocks was a braided metal line stamped with either "XXCY" or "XXGY". Defendant claims that it does not distribute water supply lines with those markings. Instead, the water supply lines Defendant distributes are typically stamped with the ELITE logo. In addition, the lines sold by Defendant are two centimeters[1] longer than the line installed by the Schrocks. Accordingly, Defendant's owner is "100% sure" the faulty supply line did not come from his company.

The Schrocks had no difficulty installing the faucet and supply lines, and the faucet worked as expected for approximately ten weeks. At 6:00 a.m. on July 14, 2015, Mr. Schrock and his sons awoke to water streaming from the vanity where the sink and faucet had been installed. During the night, the water supply line had burst, and water had infiltrated all three floors of the home. Although Mr. Schrock shut the water off to the home upon discovering the leak, the damage had already been done. The damage appears to have been extensive, as the Schrocks were forced to move out of the home during the remediation and repair process and were not able to move back into the home until December 2015 or January 2016. Plaintiff paid a total of $150,800.01 on behalf of the Schrocks for restoring the home, replacing personal property, and providing alternative living arrangements.

---

[1] Plaintiff states in its Brief that Kevin Ng, Defendant's owner, does not "explain how he can tell from a photograph that the supply line was allegedly two centimeters too short" in his deposition. (ECF No. 48 at 6). While this is true, it is also true that counsel for Plaintiff never asks.

The origin of the faucet and supply line is a mystery. Defendant does not manufacture anything. Instead, it imports products from China to sell in the American market. Defendant has identified a Chinese company by the name of ECAE as the manufacturer for the faucet, but no other information regarding this company has been provided. No evidence has been designated by either party as to who manufactured the supply line.

As a mere importer, Defendant has no oversight as to the products it sells. Defendant simply orders a product, and the manufacturer produces it. Defendant does not provide material specifications for the products, and indeed does not appear to know the materials that comprise the products. When the products arrive at Defendant's warehouse, one of its employees places the boxed product on a shelf. Defendant does not inspect the products as they arrive.

As part of its investigation into the cause of the loss, Plaintiff hired Donan Engineering ("Donan") to "identify any failure of the water supply lines in this matter, and to determine any cause of any such identified failure." (ECF No. 48-6 at 1). The supply line is described as containing "a 3/8-inch chrome-plated brass compression nut at one end and a male-threaded proprietary fitting at its other end." (*Id*. at 5). By "proprietary," Donan means "the fitting is not universal." (*Id*. at 2). Donan states that the supply line could not be purchased at a plumbing store, but instead would have to be ordered from the manufacturer. There is no indication how Donan came to the conclusion that the fitting was proprietary.

Donan concluded that the supply line's brass fitting suffered a stress corrosion crack caused by dezincification. This dezincification was caused by the brass fitting being comprised of too much zinc and not enough copper; Donan's testing revealed that the fitting had more than twice the amount of zinc than is recommended by industry standards. Donan's ultimate conclusions described the failure as a "manufacturer's defect with respect to a material deficiency and/or

susceptible material selection given the product's intended and anticipated use." (*Id*. at 16). Defendant does not challenge these findings.

## LEGAL ANALYSIS

**A.**   ***Summary Judgment Standard***

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When, as here, the moving party has the burden of proof at trial, that party "must establish affirmatively the lack of 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Reserve Supply v. Owens-Corning Fiberglas*, 971 F.2d 37, 42 (7th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986)). In other words, "the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *see also Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Int'l Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1264-65 (5th Cir. 1991); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986); *F.T.C. v. Am. Standard Credit Sys., Inc*., 874 F. Supp. 1080, 1086 (C.D. Cal. 1994); W.

Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Celotex*, 477 U.S. at 331 (Brennan J., dissenting)).

Where the moving party has the burden of proof, the nonmoving party "must produce its significant, probative evidence *only after* the movant has satisfied its burden of demonstrating there is no genuine issue of material fact." *Chanel, Inc. v. Italian Activewear of Fl., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (emphasis supplied). Thus, if the moving party with the burden of proof at trial fails to establish the absence of a genuine factual issue, the motion must be denied even if the opposing party presents no evidence. *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 802 (5th Cir. 1993); *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3rd Cir. 1992); *Houghton v. South,* 965 F.2d 1532, 1536-37 (9th Cir. 1992); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3rd Cir. 1992); *Int'l Shortstop*, 939 F.2d at 1265.

**B.** ***Plaintiff has Failed to Demonstrate that Defendant can be Held Liable Under the Indiana Product Liability Act***

The sole basis on which Plaintiff moves for summary judgment is its claim that Defendant is liable for "strict product liability pursuant to the Indiana Product Liability Act." (ECF No. 48 at 9). The Act provides that:

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

5

> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind. Code § 34-20-2-1. Generally, as Plaintiff notes, an action under the Act can only be brought against a manufacturer. Ind. Code § 34-20-2-3. However, as Plaintiff also notes, there is an exception to that rule in Section 4 of the Act:

> If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this chapter, the manufacturer of the product.

Ind. Code § 34-20-2-4.

Plaintiff concedes that, because Defendant does not manufacture anything, it can only be liable under the Act if it falls under the "principal distributor or seller" exception in Section 4. (ECF No. 48 at 10). Therefore, Plaintiff must establish that there is no material issue of fact that: (1) this Court is unable to hold jurisdiction over the manufacturer of the supply line; and (2) Defendant is the principal distributor or seller of the supply line.

Plaintiff takes an interesting tact in arguing the jurisdictional requirement. Plaintiff asserts, "[t]he parties in this case cannot even engage in a personal jurisdiction analysis regarding the manufacturer of the defective water supply line" because Defendant cannot identify that manufacturer. (ECF No. 48 at 13). Accepting this statement as true, it eliminates any possibility that Plaintiff could obtain summary judgment. If Plaintiff cannot so much as identify the manufacturer, how can it demonstrate that there is no genuine issue of material fact as to whether this Court has jurisdiction over that manufacturer? Plaintiff asserts that the manufacturer is Chinese, but that is hardly a definitive bar to personal jurisdiction. *See, e.g.*, *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015); *InStep Software LLC v. Instep (Beijing)*

6

*Software Co., Ltd.*, 2012 WL 3151428 (N.D. Ill. 2012). This Court cannot determine, as a matter of law, that it does not have jurisdiction over an unknown party, and it rejects Plaintiff's invitation to simply assume away this threshold requirement.

This complete lack of knowledge also undercuts any suggestion that Defendant is, as a matter of law, the principal distributor of the supply lines. Again, without knowing who manufactures the supply lines, it is impossible to undertake an assessment of the distribution network of that manufacturer. Maybe Defendant is the principal distributor, or maybe the manufacturer distributes through hundreds of different companies. With no evidence either way, Plaintiff cannot possibly obtain summary judgment.

Donan's assertion of a "proprietary" fitting does not change this analysis. An expert witness is not permitted to guess or base his opinion on surmise or conjecture. *Lombardi v. Dow Chem. Co.*, 487 U.S. 1234 (1988); *In Re Agent Orange Prod. Liab. Litigation*, 611 F. Supp. 1223, 1244, 1248–49 (E.D.N.Y. 1985); *Johnston v. United States*, 597 F. Supp. 374 (D. Kan. 1984). A court is not bound by the mere assertions of an expert, but it must "pay special attention to expert testimony," *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987), and must "look behind the expert's ultimate conclusion . . . and analyze the adequacy of its foundation." *Peterson v. Sealed Air Corp.*, 1991 WL 66370 (N.D. Ill. 1991) (quoting *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829 (D.C. Cir. 1988)). Here, there is nothing in Donan's report, or the investigator's affidavit, that states the basis for the conclusion that the fitting is "proprietary." Instead, the Court is simply asked to accept this assertion as true.

Moreover, the report gives no indication of how "proprietary" the fitting is. Is the fitting proprietary to ELITE products? Or, perhaps, is it proprietary to all the brands produced at the manufacturing plant where the faucet was made? Is it proprietary to Chinese faucets as a whole?

The fact that one cannot purchase the line at Home Depot does very little to establish that Defendant is necessarily the principal distributor of the line and does nothing to establish that fact as a matter of law.

In light of the foregoing, Plaintiff cannot establish for the purpose of summary judgment that it can bring a strict liability claim against Defendant under the Act. Since that is the only basis on which it moves, the motion for summary judgment must be denied. The remaining arguments of the parties need not be addressed given the dispositive nature of the foregoing issue.

## FEDERAL RULE OF CIVIL PROCEDURE 56(f) NOTICE

Federal Rule of Civil Procedure 56(f) permits the Court, after giving notice and a reasonable time to respond, to grant summary judgment for a nonmovant. Fed. R. Civ. P. 56(f)(1). Accordingly, the Court grants Defendant thirty days from the date of this Opinion and Order to move for summary judgment: (1) on Count I of Plaintiff's First Amended Complaint for the reasons set forth in Section B above, and specifically Plaintiff's inability to establish Defendant's liability under Ind. Code § 34-20-2-4; and (2) if summary judgment is granted on Court I, Plaintiff's ability to maintain an action for negligence outside of the Act in light of the Act's scope as set forth in Ind. Code § 34-20-1-1. All briefing shall conform to the requirements of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 48) is DENIED. The parties are ORDERED to brief Defendant's entitlement to summary judgment as set forth in the Rule 56(f) Notice above.

SO ORDERED on June 12, 2019.

                                         s/ Holly A. Brady  
                                        JUDGE HOLLY A. BRADY  
                                        UNITED STATES DISTRICT COURT